Mr. Justice James
delivered the opinion of the court.
The plaintiff recovered judgment in the circuit court for five hundred dollars, for salary as lieutenant of Metropolitan Police, for the months of April, May, June, July and August, 1883, at one hundred dollars per month, and from that judgment the defendant has appealed.
It appears by the bill of exceptions that, on the 31st of March, 1883, the Commissioners of the District of Columbia made an order to dismiss the plaintiff from service on the police force without trial or hearing on charges against him, and that the judge who tried the cause ruled that “ the plaintiff could not, under the law, be suspended or discharged from service on the police force of the District of Columbia without trial or written charges and an opportunity to be heard in his defence.” Whether the power of the Commissioners to remove from office was absolute, or *573 was subject to this condition, is the question presented for our consideration. It is claimed on the part of the District that absolute power to remove officers of the Police force, equally with other officers under their control, was conferred upon the Commissioners by the act of June 11, 1878. The provisions of that act which relate to this subject are to be found in section 3 and section 6. Section 3 provides that the Commissioners are “authorized to abolish any office, to consolidate two or more offices, reduce the number of employees, remove from office, and make appointments to any office under them authorized by law; ” and section 6 provides that “from and after the first day of July, eighteen hundred and seventy-eight, the Board of Metropolitan Police and the Board of School Trustees shall be abolished, and all the powers and duties now exercised by them shall be transferred to the said Commissioners of the District of Columbia, who shall .have authority to employ such officers and agents and to adopt such provisions as may be necessary to carry into execution the powers and duties devolved upon them by this act.” In order to determine the effect of these two provisions we have to recur to laws already existing at the time of the enactment of June 11, 1878, and to consider them together.
The act of August 6, 1861, by which the Metropolitan Police force was established, is to be found in the Bevised Statutes relating to the District of Columbia. Section 322 of the revision provided for “a board of five commissioners of police. Section 337 provided that “the board of police is authorized to pass, from time to time, rules and regulations for the proper government and discipline of its subordinate officers, and the duties of the police force shall be executed in accordance therewith.”
Section 341 provided that “ the officers of the police force shall be severally appointed by the board of police, and such person, so appointed, shall hold office only during such time as he shall faithfully observe and execute all the rules and regulations of the board, the laws of the United States, and the laws or ordinances existing within the District, *574 and which apply to any part of the District where the members of that force may be on duty.”
Section 342 provided that'“the qualifications, enumeration and distribution of duties, mode of trial and removal from office of each officer of the police force, shall be particularly defined and prescribed by rules and regulations of the board of police, in accordance with the Constitution and laws of the United States applicable thereto.”
Section 355 provided that “no person shall be removed from the police force except upon written charges preferred against him to the board of police, and after an opportunity shall have been afforded him of being heard in his defence; and no person removed from the police force for cause shall be reappointed to any office in said force.”
It is claimed on the part of the District that the general and absolute power to “remove from office,” which was afterwards conferred upon the Commissioners by the act of 1878, repealed by implication at least so much of section 355 of the Revised Statutes as forbade the removal of any person from the police force, except upon written charges preferred against him, and after an opportunity afforded him to be heard in his defence. On the part of the plaintiff it is claimed that the act of 1878, which gives the general power of removal from office, and the act of 1861 (the original of the sections quoted from the Revision), must both be made to operate, if possible, and that, when thus construed together, the later act means that the Commissioners shall have an absolute power to remove-from office, without trial or hearing, all officers except those of the police force, and that, as to these, they shall have power to remove in the same manner as the Police Board (whose powers and duties are in terms transferred to them) had that power; namely, after a hearing upon written charges preferred.
It can hardly be said that there are any absolute rules for determining the question of implied repeal. The question in every case is, whether the intention of the later act, as ascertained by judicial*construction upon all the grounds applicable to it, is to lay down a rule which puts aside the rule *575 provided by the earlier act; and it is not reasonable, nor do we conceive it to be the law, that the intent of the later act is always to be narrowed down, so as, if possible, to preserve the operation of the earlier act. In accordance with this view we think we are bound to consider the special nature and object of this kind of legislation, and whether these two statutes present a case which stands on the same plane with the statutes to which the doctrine of enforced co-operation has ordinarily been applied.
In order properly to determine the nature of the act of 1878, we must recall the previous legislation of Congress for the establishment of a government for this District. By the act of February 21, 1871, Congress provided a Governor, a Legislative Assembly with large powers, and certain boards charged with independent powers; leaving in existence certain boards which already possessed independent powers. When this system was found to be inconvenient, Congress established, in 1874, Commissioners in whom the greater part of the powers theretofore distributed were merged; still leaving in existence, however, the old School Board with its powers, and the Police Board with its separate powers. Finally, in 1878, Congress passed a law intended, as we think, to establish a complete system of government for this District, concentrating in three Commissioners such powers and duties as had, until that time, been independent of them. This act, we conceive, is to be regarded as an organic act, intended to dispose of the whole question of a government for this District, and the powers bestowed by it upon the Commissioners are to be regarded as organic powers. In other words, we must address out selves to the work of construing it much as we should to the construction of what are called constitutional powers. If this be the true nature of this statute, a general power, given to the possessors and executives of all the powers of government provided for the District, must be intended to be complete and comprehensive, and is not to be cut down by referring to antecedent statutes which had made special provisions for a part of the government of this District. When, for exam- *576 pie, we find that tlie Commissioners are invested with power to abolish offices, to consolidate several offices, to reduce the number of employees, to remove from office, and to appoint to office, can we doubt that it was the intention of Congress to bestow what we have called an organic power over the subject of offices, especially when we find that this power includes legislative as well as executive functions ? And can we doubt that, as organic power. These powers of abolition, consolidation, removal and appointment must be intended to replace former systems ? We conceive that this is the true character of the complete organization provided by the act of 1878 for the government of .this District, and that, when so regarded, it must be held to do away the impediments which pre-existing acts on special subjects would place in the way of the organic power over the whole subject of offices. We hold, therefore, that, by a necessary implication, that provision of the act of 1861 which, with a view to the government of the police, and not to personal privilege and exemption, forbade the removal of any person from that office except on conditions, was repealed by the organic act of 1878 which gave to the Commissioners the general power of of removal from office.
■ The judgment of the circuit court must therefore be reversed.